DONNA F. FOREMAN WATTERS, APPELLANT, v. GEORGE ELLIS FOREMAN, APPELLEE.

284 N. W. 2d 850

Filed October 30, 1979. No. 42393.

Martin A. Cannon of Matthews & Cannon, P.C., for appellant.

Dennis P. Hogan III of Gaines Otis Mullen & Carta, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The appellant herein (Watters) appeals from a judgment of the District Court for Madison County, Nebraska, entered by District Judge Eugene McFadden, which sustained the appellee's (Foreman) motion for summary judgment and denied Watters' motion for summary judgment. We have examined the files and records in this case and have concluded that the trial court was in error in sustaining Foreman's motion for summary judgment and denying Watters' motion for summary judgment, and therefore reverse the action of the trial court and remand the proceeding to the District Court for Madison County with directions to enter summary judgment in favor of Watters and against Foreman.

The issue in this appeal is whether, under the provisions of section 42-365, R. R. S. 1943, the remarriage of Watters results in a termination of alimony provided for by the trial court's decree. We think the record is clear as a matter of fact that only the death of Watters could terminate the payment of alimony and that as a matter of law Watters remains entitled to receive payment notwithstanding her subsequent remarriage.

The evidence discloses that on May 23, 1974, after 33 years duration, the marriage between Watters and Foreman was dissolved. The decree entered by District Judge George Dittrick recited in part: "That the stipulation and agreement entered into by

the parties in open court is fair and reasonable and should be approved, allowed and incorporated in this Decree." The record before the court does not fully disclose what was the stipulation and agreement entered into by the parties, but presumably it is in part what was thereafter reflected in the decree.

The decree provided that Watters should be awarded the sum of $18,500 "in full and complete settlement of all property rights of said petitioner in the property of the parties, save and except such as is awarded to her herein." She likewise received a 1973 Cadillac, free and clear of all encumbrances, and the household furniture and fixtures in her possession, as well as her own personal property. All other property of the parties, whether real, personal, or mixed, was awarded to Foreman, except with regard to the interest the parties had in property in Mexico, which is not otherwise described in the decree. With regard to the property in Mexico, real, personal, and mixed, it was to be assigned equally to the parties. Foreman was likewise ordered to pay Watters' attorney the sum of $5,000. The awarding of such a fee in a noncontested case raises some presumption that the value of the marital estate was considerable, and that an award of $18,500, a 1973 Cadillac, and household goods not otherwise described would be considerably less than a fair and equitable division of the marital estate of the parties. The deposition of Foreman, taken on April 7, 1978, and considered by the trial court in its ruling on the two motions for summary judgment, indicates, by Foreman's own admission, the existence of a marital estate in excess of $200,000 at the time of the dissolution of the marriage.

The provision of the decree which causes the difficulty herein is paragraph 6, which provides: "That said Respondent [Foreman] shall pay to said Petitioner [Watters] the sum of $1,000.00 monthly for a period of 10 years and 1 month, which payments

shall commence on the first day of July, 1974, and shall continue for 121 consecutive monthly payments upon like day of each month, which includes the first payment, which payments shall cease upon the death of said Petitioner [Watters] prior to the making of all of such payments, which payments shall be for the support and maintenance and as alimony for said Petitioner [Watters], and in the event of the death of said Respondent [Foreman], the personal representative of said deceased Respondent [Foreman] shall continue to make such payments during the period herein provided, all of which payments shall be deductible by said Respondent [Foreman] for income tax purposes and shall be includable in taxable income of said Petitioner [Watters], *and said provisions for alimony and property settlement are final and complete and not subject to revision or amendment."* (Emphasis supplied.)

Thereafter, on October 1, 1977, Watters remarried. On November 30, 1977, Foreman filed an application in the District Court for Madison County, Nebraska, alleging that Watters had remarried and that therefore, pursuant to the provisions of section 42-365, R. R. S. 1943, all further alimony payments should terminate. Section 42-365, R. R. S. 1943, provides in part as follows: "Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." Foreman argues that the requirements of section 42-365, R. R. S. 1943, are absolute and self-executing, and therefore as a matter of law, Watters having remarried, the order for alimony must terminate. It was apparently on that basis that the trial court granted the motion for summary judgment.

Foreman's position would be well taken were it not for the introductory language of the pertinent portion of section 42-365, R. R. S. 1943, which provides: "Except as otherwise agreed by the parties

in writing *or by order of the court * * *."* (Emphasis supplied.)

As reflected by its introductory language, the decree ordered by the court appears to reflect the intention of the parties. Watters maintains that the intention of the parties and the order of the court are to the effect that neither party could seek to have the decree revised or modified as to alimony and that only the death of Watters could relieve Foreman from paying Watters $1,000 per month for 121 months. Nothing else, including her remarriage, could result in a revision or amendment. We believe a clear reading of the record and the decree supports that view as a matter of law.

The central question which must be addressed in reviewing this matter relates to the trial court's direction in the decree that the "provisions for alimony and property settlement are final and complete and not subject to revision or amendment." The provisions with regard to the payment of $18,500, the Cadillac, the household goods, and the property in Mexico could not be subject to revision or amendment. The payment of money and the division of property were to be made forthwith and were not subject to revision. The only item remaining which could be subject to later amendment or revision was the provision for installment payments in paragraph 6 of the decree; and with regard to those payments, the court specifically ordered it was to be "final and complete and *not subject to revision or amendment."* (Emphasis supplied.)

Can the exception to section 42-365, R. R. S. 1943, regarding remarriage, take effect only if the word "remarriage" is used, or can we look to the entire document? We think the use of the word "remarriage," while desirable and helpful, is not absolute. The language used in the decree undoubtedly could have been clearer, yet any other conclusion than that reached by our decision herein would render

the language meaningless. In view of the words used, we can only presume the court intended that the payments provided for by paragraph 6 of the decree were to remain absolute and constant for 121 months, subject to termination only in the event of Watters' death. That is the clear meaning of paragraph 6, and it is sufficient to bring the decree within the exception to section 42-365, R. R. S. 1943, regarding remarriage.

Foreman argues that, having failed to specifically spell out the exceptions to section 42-365, R. R. S. 1943, the parties in the first instance and the court by its decree intended to incorporate the termination provisions of section 42-365, R. R. S. 1943. The language of the decree, however, will not support that view. In the absence of contrary language, *both* happenings, the death *or* the remarriage of the spouse awarded alimony, cause the alimony to terminate. In this decree it was provided that the death of Watters *would* cause the alimony to terminate. Nothing was said about remarriage, and the decree further provided that the ordered payments, *except* in the event of Watters' death, were not to be modified or amended.

Had the court intended to subject the decree to the provisions of section 42-365, R. R. S. 1943, *both* as to death *or* remarriage, it would not have been necessary to say anything about death. Section 42-365, R. R. S. 1943, would have taken care of that situation, just as it would have taken care of remarriage. However, by including *only* the death provision of section 42-365, R. R. S. 1943, and otherwise prohibiting any other act from modifying or amending the decree, it appears clear beyond question that the trial court intended that *only* death could terminate the required payments.

Other courts that have been called upon to review similar language have in fact reached such a conclusion. In the case of Rheuban v. Rheuban, 238 Cal.

App. 2d 552, 47 Cal. Rptr. 884, the court was called upon to examine a decree almost identical to the decree involved in the instant case. The California decree, after setting out its various provisions, provided: "It is intended by the parties that these terms and provisions for the support and maintenance of First Party shall forever remain fixed as set forth herein and shall not be subject to change or modification except as may be set forth herein. In this regard, First Party now and forever waives any future right to any change or modification of the provisions for her alimony and support, and the Second Party likewise joins in the waiver of any rights to so change or modify same." The agreement further provided that the decree was to survive the death of the husband. No mention was made with regard to remarriage. Section 139 of the California Civil Code reads in part as follows: "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." In holding that the quoted language was sufficient to satisfy the statutory requirement, the California court said: "The agreement now before us says, as clearly as words could say, that it was the definite intention of the parties that the payments provided for by paragraph II should continue for the full 128 months agreed upon, no matter what happened. Unless we are to hold that the application of section 139 can be obviated only by an agreement which not only is in writing but which uses a magical formula that includes the exact words 'remarriage' and 'death,' the language used by the Rheubans is sufficient to show that (in the words of the opening clause of the statutory paragraph relied on) they had 'otherwise agreed.' We can see no reason why, if the intent of the parties is clear, any particular words should be

required to accomplish their purpose; the agreement here complied with the statutory requirement." To similar effect, see, In re Marriage of Nicolaides, 39 Cal. App. 3d 192, 114 Cal. Rptr. 56.

We likewise conclude that an examination of the court's decree discloses that the provision for support payments was intended to continue at $1,000 per month for 121 months, regardless of whether the wife remarried. Where the parties by their agreement in writing, or the court by its decree, provide that a specific amount of alimony shall be paid for a specific period of time, and shall terminate only upon the occurring of a specific event set out in the agreement or decree and otherwise shall not be subject to amendment or revision, the payment of such alimony shall terminate only upon the happening of the event set out in the agreement or decree. Under such circumstances the remarriage of a party receiving alimony shall not cause the alimony to terminate, absent a specific provision in the agreement or decree to such effect, and the use of the word "remarriage" is not necessary. Watters was entitled as a matter of law to have judgment entered in her favor, finding that her remarriage did not cause her alimony to terminate. Where there exists no genuine issue of a material fact and a litigant is entitled to judgment as a matter of law, it is error for the trial court to overrule the litigant's motion for summary judgment. § 25-1332, R. R. S. 1943; Dougherty v. Commonwealth Co., 172 Neb. 330, 109 N. W. 2d 409. We accordingly reverse the decision of the trial court in granting appellee's motion for summary judgment and remand the cause to the District Court for Madison County, Nebraska, with directions to enter summary judgment for the appellant, finding as a matter of law that her remarriage does not terminate appellee's obligation to make payments

pursuant to paragraph 6 of the decree entered on May 23, 1974.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I respectfully dissent from the majority opinion. Section 42-365, R. R. S. 1943, provides that alimony orders shall *terminate* upon the death of either party or remarriage of the recipient, except as otherwise agreed by the parties in writing or by order of the court. The majority opinion holds that, in this case, the order directed "otherwise" in the case of remarriage by using the language, "and said provisions for alimony and property settlement are final and complete and not subject to revision or amendment."

The language of the statute is the "alimony orders shall terminate." This indicates to me that the statute is self-executing, and the obligation to pay ends by operation of law when the event occurs, in this instance, remarriage of the recipient. No action by the court is necessary for the termination to take place. An order of the court "otherwise" in an alimony decree should be specific and in clear terms negate the specific condition or conditions which do not operate to terminate the obligation. In this case the decree did not mention remarriage as an occurrence which would not operate to terminate the alimony obligation. It used the terms, "final and complete and not subject to *revision* or *amendment*." (Emphasis supplied.) Further, the quoted language refers not only to alimony, but to property settlement as well. Section 42-365, R. R. S. 1943, obviously does not pertain to property settlements. Revision and modification are terms related to court action and clearly do not refer to "termination" by operation of law. It is not difficult to draw an unambiguous decree. How the language the court used in this case permits a summary judgment to be entered for

the appellant is beyond my understanding. I would affirm the judgment of the District Court.