SHIRLEY MAXINE KINGERY, APPELLEE, v. FRANCIS RUSSELL KINGERY, APPELLANT.

320 N.W.2d 441

Filed June 4, 1982. No. 81-855.

S. Caporale, for appellant.

Donald A. Roberts of Lustgarten & Roberts, for appellee.

Submitted without oral argument. KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

CLINTON, J.

The question raised on this appeal is whether the wife's right to alimony under a decree of dissolution entered on February 13, 1980, under the provisions of Neb. Rev. Stat. § 42-365 (Reissue 1978), was terminated by her remarriage. The decree of dissolution provided: "That the Respondent shall pay through the Clerk of the District Court of Douglas County, Nebraska as alimony for the Petitioner, the total sum of $10,000.00, payable at the rate of $150.00 per month, payable at the rate of one-half or $75.00 on the 15th of February, 1980, and one-half or $75.00 on the 1st and the 15th of each and every month thereafter until the total alimony award of $10,000.00 is paid in full." The wife, by pleading, admitted that she had remarried in February 1981.

The trial court entered an order finding that paragraph XVI provided for alimony in gross which did not terminate upon her remarriage. The husband appeals and relies upon the provisions of § 42-365, which provides in part: "Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." The wife relies upon various decisions of this court which hold that awards of alimony in gross are not subject to modification or termination. All of the authorities upon which she relies relate to decrees entered prior to July 6, 1972, the effective date of § 42-365. Likewise, reliance is placed upon our more recent holding in *Watters v. Foreman,* 204 Neb. 670, 284 N.W.2d 850 (1979).

In *Karrer v. Karrer,* 190 Neb. 610, 211 N.W.2d 116 (1973), we held that an award of alimony in gross entered prior to July 6, 1972, was not subject to modification or termination under § 42-365, because it was beyond the power of the Legislature to provide for the modification of a judgment that was final at the time the law was enacted. We noted: "The lan-

guage of these sections of the statutes is clear. Section 42-365, R. S. Supp., 1972, provides in part: 'Except as to amounts accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown, but where alimony is not allowed in the original decree dissolving a marriage, such decree may not be modified to award alimony. Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient.' Section 42-379(3), R. S. Supp., 1972, provides: 'Sections 42-347 to 42-379 shall apply to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to July 6, 1972.' It is obvious that the Legislature intended to give the courts power to modify any alimony award even though entered prior to July 6, 1972." 190 Neb. at 613, 211 N.W.2d at 118.

In *Watters, supra,* the wife had been awarded alimony of $1,000 monthly for a period of 10 years and 1 month. The decree specifically provided that the alimony should not terminate upon the death of the husband, and also provided " *'said provisions for alimony and property settlement are final and complete and not subject to revision or amendment.'* " 204 Neb. at 673, 284 N.W.2d at 852. We there held that the quoted language constituted an order "otherwise" of the court within the meaning of § 42-365 and that the wife's remarriage did not terminate the right to alimony. In so holding, we relied upon the California case of *Rheuban v. Rheuban,* 238 Cal. App. 2d 552, 47 Cal. Rptr. 884 (1965), which applied a provision of the California statute similar to § 42-365 to a decree which provided: " 'It is intended by the parties that these terms and provisions for the support and maintenance of First Party shall forever remain fixed as set forth herein and shall not be subject to change or

modification except as may be set forth herein. In this regard, First Party now and forever waives any future right to any change or modification of the provisions for her alimony and support, and the Second Party likewise joins in the waiver of any rights to so change or modify same.' " 204 Neb. at 676, 284 N.W.2d at 854.

The wife in the case at bar contends that (1) awards of alimony in gross are not subject to termination under § 42-365, and (2) the language of the decree in this case, "until the total alimony award of $10,000.00 is paid in full," evidences an intention by the court to remove the alimony award from the termination provisions of § 42-365 in the event of remarriage.

The literal language of § 42-365, "alimony orders," indicates that it applies to all orders for alimony, for no distinction is made between permanent alimony, alimony for an indefinite period, or alimony in gross, which latter classification under our prior decisions includes both alimony payable over a specified period and alimony of a definite amount payable in installments.

In *Watters, supra,* the alimony award was in gross. It is implicit in the rationale of our decision in that case that we recognized awards of alimony in gross were not excluded from termination by reason of death or remarriage under the provisions of § 42-365, because our holding was based upon a determination of the intention of the parties as set forth in the agreement. We must reject the contention that the awards of alimony in gross are excluded from the termination provisions of § 42-365, because to hold otherwise would be simply to rewrite the statute. This we cannot do.

We must, therefore, then consider the question of whether the words of the decree in this case, "until the total alimony award of $10,000.00 is paid in full," constitute an order providing "otherwise." The lan-

guage of paragraph XVI would mean the same whether it ended with the words "every month thereafter" or included the words which follow, "until the total alimony award of $10,000.00 is paid in full." Those words say no more than if the court in its order had calculated the date when the payments would end.

The words, "terminate upon the death of either party or the remarriage of the recipient," clearly show that this portion of the statute needs no order of court to effect termination. The alimony terminates by operation of law when the condition occurs. *Stokes v. Stokes,* 14 Cal. App. 3d 470, 92 Cal. Rptr. 468 (1971); *Berkely v. Berkely,* 269 Cal. App. 2d 872, 75 Cal. Rptr. 294 (1969); *Spratlen v. Spratlen,* 30 Colo. App. 91, 491 P.2d 608 (1971).

The pertinent provisions of the California Civil Code involved in *Stokes, supra,* and *Berkely, supra,* provide that the court may order support for one party by the other in any amount for any period of time. Cal. Civ. Code § 4801(a) (West Supp. 1982). It then specifies the matters which the court should take into consideration in making such support orders. § 4801(a)(1)-(9). Section 4801(b) (formerly Cal. Civ. Code § 139 (West 1954)) provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party." That language has remained unchanged in the various amendments to the California marriage dissolution statutes.

In *Stokes, supra,* the court had made an award of alimony to the wife for a period of 4 years. During that period she remarried. The court held that under § 139 the obligation of the husband was terminated by operation of law. It said: "The Legislature has given special, particular meaning to the word termination, as opposed to modification or

revocation, in section 139." 14 Cal. App. 3d at 472, 92 Cal. Rptr. at 469. In *Berkely, supra,* a similar question was involved. The operative facts in that case were that the wife had remarried and then their marriage had been annulled. The court, speaking through Judge Christian, in holding that the remarriage had terminated the right to alimony, said: "Because of the existence of section 139 of the Civil Code, decisions from other states are of only illustrative value; most states do not have similar statutes providing for termination of alimony as a matter of law." 269 Cal. App. 2d at 874, 75 Cal. Rptr. at 296. In *Spratlen, supra,* the Colorado Court of Appeals was called upon to apply Colo. Rev. Stat. § 46-1-5(5) (1963), which provides: " 'The remarriage of a party entitled to alimony . . . shall relieve the other party from further payments of said alimony; but nothing in this section shall preclude the parties from providing otherwise by written agreement or stipulation.' " 30 Colo. App. at 93, 491 P.2d at 609. In that case the support payments were provided for by an agreement in writing and provided for payment of a definite monthly sum until the happening of a certain contingency, and then provided: " 'At that time this reduction of obligations of F. P. Spratlen, III, will be taken into consideration in fixing the amount of alimony.' " 30 Colo. App. at 92, 491 P.2d at 609. The wife contended that her remarriage a few months after the divorce did not terminate the alimony because the language of the agreement constituted "an agreement" to the contrary within the meaning of the statute. The court said: "We do not agree. It is clear that the section of the statute involved requires an express statement that alimony continue after remarriage, and the failure of the agreement in question to specify this point is fatal to her argument." 30 Colo. App. at 94, 491 P.2d at 610.

We hold that the order of the court in this case

does not evidence an intention that the alimony order should not terminate on remarriage.

REVERSED AND REMANDED.

CAPORALE, J., disqualified.