MARK RAY, APPELLANT, V. ARGOS CORPORATION, A DISSOLVED IOWA CORPORATION, ET AL., APPELLEES.

612 N.W.2d 246

Filed June 23, 2000.   No. S-99-301.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellant.

Paul D. Lundberg, of Hellige, Lundberg, Meis, Erickson & Frey, for appellee Argos Corp.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

Mark Ray was injured while working on the construction of a building for Mid-Continent Bottlers in Omaha, Nebraska. Mid-Continent Bottlers had hired the Christensen Corporation as the general contractor, and Christensen in turn had hired the Argos Corporation as an independent contractor to provide all labor, materials, and equipment to complete certain aspects of the construction, including the erection of the structural steelwork. Argos subcontracted with Northwest Erection Services, Inc. (Northwest), to perform the structural steelwork.

Ray, an employee of Northwest, was injured when he fell from the partially completed steel structure. Ray sued Christensen and Argos, alleging negligence. Argos moved for summary judgment, which was granted by the district court. The issue presented in this appeal is whether Restatement (Second) of Torts § 413 (1965 & Supp. 1969) gives rise to a duty from Argos to Ray, such that summary judgment should not have been entered.

## FACTUAL BACKGROUND

The factual circumstances surrounding Ray's accident are not at issue in this appeal. On December 15, 1995, Ray climbed down a ladder from the 25-foot-high steel beam on which he was working and assisted in moving pads used to stabilize outriggers on a mobile truck crane being used by Northwest. Ray then removed the overshoes which he had worn while on the ground and returned to the 25-foot-high beam, which had become covered with slippery patches of mud and moisture that had been tracked on its surface. Ray slipped off the damp, muddy beam, fell 25 feet to the ground, and was injured.

Argos filed a motion for summary judgment, which was granted. The district court determined that Argos exercised no control over the worksite and thus owed no duty to Ray. The district court further noted that any duty owed by Argos to Ray under § 413 was satisfied by Argos' hiring of a competent subcontractor. Ray appeals.

Northwest and GAB Robins North America, Inc., are parties only insofar as they, as Ray's employer and workers' compensation insurance carrier, have a subrogation interest in any recovery by Ray. The parties agree that Christensen was not served with process, never appeared in the district court, and was not a party to the case at the time that summary judgment was entered. Consequently, the district court's order disposed of all the remaining issues in the case, and Neb. Rev. Stat. § 25-705 (Cum. Supp. 1998) does not affect our review of this matter.

## ASSIGNMENTS OF ERROR

Ray assigns, consolidated and restated, that the district court erred in granting summary judgment, as Argos had a nondelegable duty to take precautions against injuries.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Turner v. Fehrs Neb. Tractor & Equip.,* ante p. 313, 609 N.W.2d 652 (2000).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■ The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.* On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

Ray's brief states his theory of the case as follows:

> Plaintiff's theory of recovery can be briefly summarized as follows: **Argos expressly assumed the duty to provide for safety precautions on the construction project under its written contract to provide steel materials and labor with the general contractor Christensen. Argos then employed an independent subcontractor, Northwest Erection, essentially to provide the labor to erect the steel frame of the building. Argos admitted that it failed to provide in a contract with Northwest or otherwise for the taking of safety precautions.**
>
> Such failures give rise to <u>direct</u> liability against Argos under Restatement (Second) of Torts § 413 and for contractually assumed duties as a matter of law.

(Emphasis in original.) Brief for appellant at 11-12.

Restatement (Second) of Torts § 413 at 384-85 (1965 & Supp. 1969) provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Ray argues that for purposes of this appeal, by virtue of the terms of the contract between Argos and Christensen, Argos

should be regarded as the "employer" and Northwest the "independent contractor" under § 413. Even assuming Ray's argument regarding Argos' status as employer to be correct, Ray's assignment of error is without merit.

■ Generally, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. There are two recognized exceptions to the general rule. The employer of an independent contractor may be vicariously liable to a third party (1) if the employer retains control over the contractor's work or (2) if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

Ray concedes that Argos did not retain control over Northwest's work, and instead argues that § 413 states a rule of law that places on Argos a nondelegable duty to protect others from harm. The rule of law stated in § 413 only gives rise to a duty, however, if the activity in question is one which "the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken." Thus, if the work performed in this case did not create a peculiar risk, then summary judgment was properly granted.

The Restatement, *supra*, comment *b.* at 385, provides that § 413

> is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. . . .
>
> This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions.

■ We have defined a special or peculiar risk as one that differs from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence that are usual in the community. It must involve some special hazard

resulting from the nature of the work done, which calls for special precautions. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998); *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997). We have also described a special or peculiar risk in terms of the risk associated with an "inherently dangerous" activity. See, e.g., *Parker v. Lancaster Cty. Sch. Dist. No. 001, supra*; *Kime v. Hobbs, supra*.

It should be noted that neither party has argued that the type of work involved in this construction project was an "ultrahazardous" activity implicating principles of strict liability, and we do not address "ultrahazardous" activity. See *Anderson v. Nashua Corp., supra*.

Ray relies upon *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). In that case, the decedent was killed while welding steel cross-members to steel columns as part of the framework inside a building. *Id.* When the cross-member supporting the platform on which the decedent was working collapsed, the decedent fell to his death. *Id.* This court concluded, based upon the above-stated proposition, that "[w]ithout question, steel construction work involves risks which an average person does not ordinarily encounter on a day-to-day basis." *Id.* at 800, 496 N.W.2d at 913.

However, contrary to Ray's suggestion, *Parrish* does not resolve the issue presented in the instant case. In *Parrish*, given the facts noted above, the risk that resulted in the decedent's injury was clearly peculiar to steel erection work. However, in order to fall within the scope of the duty defined by Restatement (Second) of Torts § 413 (1965 & Supp. 1969), not only must the work carry a peculiar risk, but the injury must result from that risk. In other words, even assuming that steel construction work may involve some peculiar risks, there remains the question of whether Argos' duty included protecting Ray from slipping and falling from the partially completed building.

We conclude that it did not. Regardless of the type of work being conducted, the risk of a slip and fall from a partially completed structure is inherent in any kind of construction, from steel erection work to residential home building. To hold that such a slip and fall is a "peculiar risk" would be to expand the

meaning of that term to encompass practically all construction work.

In *Clausen v. R.W. Gilbert Const. Co., Inc.*, 309 N.W.2d 462 (Iowa 1981), the plaintiff was repairing a roof. The sloping areas of the roof were covered with patches of frost, and the plaintiff was injured when he fell off the roof, 16 to 20 feet to the ground. *Id.* The plaintiff claimed that the fall was caused by a gusty wind. *Id.* The Supreme Court of Iowa concluded that the work did not involve a peculiar risk, as "[n]othing in this record persuades us this work was so inherently dangerous that, as a matter of public policy, we should declare it nondelegable and allow a jury to consider [the contractor's] vicarious liability." *Id.* at 467. See, also, *Robinson v. Poured Walls of Iowa, Inc.*, 553 N.W.2d 873 (Iowa 1996) (holding that ordinary building projects are not covered by peculiar risk doctrine).

Similarly, in *Sievers v. McClure*, 746 P.2d 885 (Alaska 1987), the decedent, an employee of a roofing company, was instructed to climb onto the roof of a partially completed fourplex and thaw the ice that had formed there. The decedent slipped on the ice and fell to his death. *Id.* The Alaska Supreme Court rejected the appellant's argument that this work involved a peculiar risk, stating:

> The risk of harm which [the decedent] encountered was the risk that all roofers routinely face—the danger of falling off a sloped roof during its construction or repair. The presence of ice on the roof does not make the risk a peculiar one, as there is nothing abnormal about ice in Alaska in November. Indeed, the risk of falling from a roofing surface made slippery by ice, rain, oil, or loose materials is a risk with which the roofer must be prepared to deal every day. Because no reasonable mind could find that the risk of falling from a sloped roof was abnormal to a contract to install a roof, [the contractor] could not be held responsible for the fall which led to [the decedent's] death. The trial court properly dismissed all claims against [the contractor] based on a peculiar risk theory.

*Id.* at 890. See, also, *Edwards v. Franklin & Marshall College*, 444 Pa. Super 1, 663 A.2d 187 (1995) (falling through rotten roof not peculiar risk where business was repair of old, deteriorating structures.)

In *Hofstetter v. Union Elec. Co.*, 724 S.W.2d 527 (Mo. App. 1986), the appellant was injured stepping down from a "ringer" crane that was being erected for use on a construction site. The appellant argued that the use of the ringer crane fell within the peculiar risk doctrine. *Id.* The Missouri Court of Appeals rejected this argument, stating:

> In the present case, to say that the erection of the ringer crane is inherently dangerous does not answer the critical issue. If we assume that, in general, the erection of the crane is an inherently dangerous activity, it does not necessarily follow that every act associated with that job, is per se, inherently dangerous. For example, in the context of this case, if, in the course of [the contractor's] performing its contract with [the landowner], the ringer crane would have given way, causing plaintiff to fall, then perhaps [the landowner] would be liable to plaintiff. In this example, the injury would have arisen as a direct result of the nature of the work of erecting the crane. Plaintiff's fall would have been a "peculiar risk" of the work itself which should have been anticipated by [the landowner]. Under these proposed set of facts, [the landowner] would not have been shielded from liability by [the contractor].

> Under the facts of the present case, however, plaintiff was injured because [the contractor] did not follow the rudimentary safety standards which [the landowner] reasonably could expect to be carried out with proper care. [The contractor's] negligence consisted solely of the improper manner in which it did the work. This collateral negligence gave rise to a new risk, one not anticipated by [the landowner]. Plaintiff's injury resulted from the common risk of not providing steps from the five-foot high platform of the ring and from not setting planks over the railroad ties, rather than from some special hazard intrinsic to the work itself.

> Plaintiff's cause of action does not fall within the inherent danger exception to the general rule which absolves a landowner of liability for the acts of an independent contractor. To hold that the activity in this case falls within the exception would be to hold that all the construction work

is *per se* inherently dangerous. Whether or not this is a socially desirable or economically feasible result is a legislative decision best left to that body constitutionally empowered to deal with it.

(Citations omitted.) *Id.* at 530-31.

We find the above-stated authority to be persuasive and likewise conclude that Ray's slip and fall does not fall within the peculiar risk doctrine. Even assuming that steel construction work carries peculiar risks, a slip and fall from the structure is not one of those peculiar risks, and thus Ray's injury does not fall within the scope of any duty that Argos may have had. Argos had no duty to provide for precautions, in its contract with Northwest or otherwise, to ensure that Ray did not slip and fall from the structure. Thus, the district court properly granted summary judgment against Ray.

■ Since we have concluded that Ray was not injured due to a peculiar risk within the meaning of Restatement (Second) of Torts § 413 (1965 & Supp. 1969), we do not reach nor do we comment on the question whether we would adopt § 413 or whether employees of independent contractors are third parties within the context of the Restatement, § 413 or § 416. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert, ante* p. 160, 608 N.W.2d 588 (2000).

## CONCLUSION

Argos had no duty to protect Ray from the type of ordinary risk that resulted in his injury. Absent such a duty, Argos could not be held liable for Ray's injury, and the district court properly granted Argos' motion for summary judgment. The judgment of the district court is therefore affirmed.

AFFIRMED.