CARL R. HOLM, APPELLANT, V. BARBARA K. HOLM,
NOW KNOWN AS BARBARA K. ASHBRIDGE, APPELLEE.

678 N.W.2d 499

Filed April 23, 2004. No. S-03-290.

Timothy W. Nelsen, of Fankhauser, Nelsen & Werts, P.C., for appellant.

Jeffery R. Kirkpatrick and Mary K. Hansen, of McHenry, Haszard, Hansen, Roth & Hupp, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This appeal presents the question of whether an obligation to pay alimony terminates upon remarriage of the recipient by operation of Neb. Rev. Stat. § 42-365 (Reissue 1998) where the decree provides that "alimony shall terminate upon the death of either party" but makes no reference to termination upon remarriage.

## FACTS

A decree dissolving the marriage of Carl R. Holm and Barbara K. Holm, now known as Barbara K. Ashbridge, was entered by the district court for Otoe County on August 18, 2000. The decree provided in relevant part:

The Petitioner, Carl R. Holm, should be and is hereby Ordered and directed to pay alimony to the Respondent, Barbara K. Holm, in the sum of ONE THOUSAND DOLLARS ($1,000.00), each month, for a period of SIXTY (60) consecutive months, the first payment being due on the 1st day of August, 2000, and continuing on the 1st day of each month thereafter for a total of SIXTY (60) consecutive months. The petitioner should be and is further Ordered and directed, in this respect, to thereafter pay alimony to the respondent in the sum of SEVEN HUNDRED FIFTY DOLLARS ($750.00), each month, for a period of SIXTY (60) consecutive months, the first of said payments being due on the 1st day August, 2005, and continuing on the 1st day of each month thereafter for a total of SIXTY (60) consecutive

months. *Said alimony shall terminate upon the death of either party.*

(Emphasis supplied.)

Barbara remarried on October 5, 2002. On November 12, Carl filed a petition to modify the decree, asserting that Barbara's remarriage was a material change in circumstances. He further asserted that the remarriage should operate to terminate the alimony obligation as a matter of law under § 42-365, which provides in relevant part that "[e]xcept as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient."

Following a hearing, the district court denied the petition to modify. The court reasoned that its specific finding that "'alimony shall terminate upon the death of either party'" was incorporated into the decree and fell within the exception to the general termination rule stated in § 42-365 and, thus, declined to terminate alimony as requested in Carl's petition to modify. Carl filed this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Carl assigns, restated, that the district court erred in its interpretation of § 42-365 when it determined that silence in the decree as to the effect of remarriage was the same as if the decree specifically ordered alimony to continue after remarriage.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law. *Brown v. Harbor Fin. Mortgage Corp.*, 267 Neb. 218, 673 N.W.2d 35 (2004); *Dean v. Yahnke*, 266 Neb. 820, 670 N.W.2d 28 (2003). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Misle v. HJA, Inc., ante* p. 375, 674 N.W.2d 257 (2004); *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003).

## ANALYSIS

Section 42-365 provides, in relevant part, that "[e]xcept as otherwise agreed by the parties in writing or by order of the

court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." In this case, it is undisputed that there was no agreement by the parties in writing. The issue, therefore, is whether the decree is an order of the court providing the requisite exception.

We addressed a similar circumstance in *Watters v. Foreman*, 204 Neb. 670, 284 N.W.2d 850 (1979). In that case, the divorce decree provided in relevant part that the alimony payments " 'shall cease upon the death of [the recipient] prior to the making of all of such payments' " and that " 'said provisions for alimony and property settlement are final and complete and not subject to revision or amendment.' " (Emphasis omitted.) *Id.* at 673, 284 N.W.2d at 852. We determined that the language in the decree fell within the exception in § 42-365, reasoning that although the decree would have been clearer if it had addressed the issue of remarriage, its meaning was that the alimony obligation would terminate only in the event of the recipient's death, and not upon her remarriage. We wrote:

Had the court intended to subject the decree to the provisions of section 42-365 . . . *both* as to death *or* remarriage, it would not have been necessary to say anything about death. Section 42-365 . . . would have taken care of that situation, just as it would have taken care of remarriage. However, by including *only* the death provision of section 42-365 . . . and otherwise prohibiting any other act from modifying or amending the decree, it appears clear beyond question that the trial court intended that *only* death could terminate the required payments.

*Watters*, 204 Neb. at 675, 284 N.W.2d at 853.

We have also addressed decrees that are silent as to the effect of both the alimony recipient's remarriage and the recipient's death. *Kingery v. Kingery*, 211 Neb. 795, 320 N.W.2d 441 (1982); *Euler v. Euler*, 207 Neb. 4, 295 N.W.2d 397 (1980). In *Kingery*, we concluded that language in the decree awarding alimony " 'until the total alimony award of $10,000.00 is paid in full' " was not an order of the court falling within the exception in § 42-365. 211 Neb. at 798, 320 N.W.2d at 443. We reasoned that the words said no more than if the court had simply calculated the date upon which the payments would end and thus did not alter the general

rule of § 42-365 that alimony was to terminate at either death or remarriage. Similarly, the decree in *Euler* provided that alimony payments were to " 'continue . . . for a period of One Hundred Twenty-one (121) months, or a total of ten (10) years and one (1) month.' " 207 Neb. at 6, 295 N.W.2d at 399. Reasoning that this language failed to provide for the termination of alimony upon the occurrence of a specified event and included no provision that the alimony was not modifiable, we held that it did not fall within the exception in § 42-365.

Unlike *Kingery* and *Euler*, the language of the decree at issue in this case is not silent regarding the effect on alimony of both remarriage and death of the recipient. Rather, as in *Watters v. Foreman*, 204 Neb. 670, 284 N.W.2d 850 (1979), the decree here specifically sets forth a specified event—the death of either party—upon which alimony is to terminate. Applying the reasoning of *Watters*, if the district court had intended the default rule to apply, it would not have made the specific finding that the alimony was to terminate upon the death of either party. Although the decree in *Watters* contained an express provision that the alimony award was not modifiable and no similar provision is contained in the decree in the instant case, we find this to be a distinction without a difference.

*Watters* constituted controlling precedent when the decree in this case was entered and became final. Because we perceive no meaningful distinction between the facts in this case and those in *Watters*, we conclude that the district court did not err in determining that under the decree, Carl's obligation to pay alimony would terminate only when all required payments were made or upon the death of either party, but not upon Barbara's remarriage.

██ We are nevertheless persuaded that the *Watters* rule should not enjoy continued vitality. The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003). See, also, *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). While the doctrine of stare decisis forms the bedrock of

our common-law jurisprudence, it does not require us to blindly perpetuate a prior interpretation of the law if we conclude that it was clearly incorrect. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). The plain language of § 42-365 states that "alimony orders shall terminate upon the death of either party or the remarriage of the recipient" *except* where the parties agree otherwise "or by order of the court." If a court chooses to exercise its authority to override the default termination provisions of § 42-365, it easily can and should do so explicitly, leaving no doubt as to its intent. We agree that "[a]n order of the court 'otherwise' in an alimony decree should be specific and in clear terms negate the specific condition or conditions which do not operate to terminate the obligation." *Watters v. Foreman*, 204 Neb. 670, 678, 284 N.W.2d 850, 855 (1979) (Clinton, J., dissenting).

■ Accordingly, we overrule *Watters* prospectively and hold that with respect to any alimony award included in a decree of dissolution entered on or after July 1, 2004, the statutory grounds for termination set forth in § 42-365 will apply unless the decree, or a written agreement of the parties, includes explicit language stating that the death of either party and/or the remarriage of the alimony recipient *shall not* terminate the alimony order.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.