LAWRENCE A. SEMLER, APPELLANT AND CROSS-APPELLEE, v. SEARS, ROEBUCK AND COMPANY, APPELLEE AND CROSS-APPELLEE, AND THE WALDINGER CORPORATION, APPELLEE AND CROSS-APPELLANT.

689 N.W.2d 327

Filed December 3, 2004.   No. S-03-995.

Kenneth Cobb, of Law Office of Kenneth Cobb, P.C., for appellant.

Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee The Waldinger Corporation.

Brian S. Kruse and Glen Th. Parks, of Rembolt, Ludtke & Berger, L.L.P., for appellee Sears, Roebuck and Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Lawrence A. Semler brought this action against Sears, Roebuck and Company (Sears) and The Waldinger Corporation (Waldinger) for injuries he sustained in a fall while using a ladder. In particular, Semler's petition alleged that Sears was negligent in providing an unsafe ladder for his use, specifically alleging that the ladder failed to have "rubber shoes." Waldinger was named a defendant due to its claimed subrogated interest in Semler's workers' compensation benefits. See Neb. Rev. Stat. § 48-118 (Reissue 2004). The district court for Lancaster County granted Sears' motion for summary judgment and dismissed Semler's action. Semler appeals, and Waldinger cross-appeals. We moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

At all times relevant to this action, Semler was employed as a heating and air-conditioning service technician for Waldinger. Semler classified his work for Waldinger as light commercial, involving the repair of heating and air-conditioning units for retail establishments.

On December 22, 1997, during the course of his employment, Waldinger dispatched Semler to the Sears store in Lincoln, Nebraska, to repair the heating unit in its product service center. Upon his arrival at the center, Semler testified that he noticed a ladder leaning against a heating unit suspended from the ceiling. After asking a Sears employee, "Is this the furnace that's not working," and receiving the response, "Yeah, it's cold as hell in here," Semler climbed the ladder to determine the nature of the problem. Semler testified that he "[m]ost likely" adjusted the ladder before climbing, but that he did not notice until after the accident whether the "shoes" on the ladder had rubber on them. According to Semler, a ladder shoe is "basically a triangulated swivel that allows a ladder to be put in several different positions."

After analyzing the problem, Semler descended the ladder and returned to his truck to obtain an electrical meter. Upon returning with the meter, Semler climbed the ladder a second time. It was on this occasion that, according to Semler, "[t]he bottom of [the ladder] slipped out," causing Semler to fall to the ground. Semler testified it was his opinion that the ladder's lack of rubber shoes caused the ladder to "slip out" on the concrete floor.

Semler also testified that as of the date of the accident, he had received specific safety training with respect to setting up and climbing ladders and that about 90 percent of the calls to which he was dispatched involved the use of a ladder. Semler further testified that Waldinger provided all the tools he needed for his job. These tools included an extension ladder with rubber shoes. Semler stated that such a ladder was on the Waldinger truck he drove to Sears, but he chose not to use it.

## ASSIGNMENTS OF ERROR

On appeal, Semler sets out nine assignments of error that can be consolidated, restated, and renumbered as three. Semler argues that the district court erred in (1) determining that Sears owed no duty to Semler "because [Semler] was an employee of an independent contractor"; (2) finding that no material issue of fact existed as to whether Sears breached its duty to Semler; and (3) finding that even assuming Sears supplied the ladder to Semler, the simple-tool doctrine discharged any duty Sears owed. Waldinger cross-appealed. Since Waldinger's assignments of error are substantially similar to Semler's, they will be considered collectively.

## STANDARD OF REVIEW

■ Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Swanson v. Ptak, ante* p. 265, 682 N.W.2d 225 (2004).

■ Statutory interpretation presents a question of law. *Holm v. Holm*, 267 Neb. 867, 678 N.W.2d 499 (2004). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *Id.*

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Demerath v. Knights of Columbus, ante* p. 132, 680 N.W.2d 200 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Before addressing Semler's and Waldinger's assignments of error, we note that the record includes the deposition testimony of Neal Simley (Neal), who was a Sears employee on the date of Semler's fall. In that deposition, Neal testified in part as follows: "[Sears' counsel:] Did you select a ladder for [Semler] to use? [Neal:] Yeah. I probably — most likely probably said, Well, here's one you can use if you want, you know." The record also includes Neal's statement that "[a]t the time, there was a 20 foot extension ladder that belonged to [the Sears] service department and I [Neal] said he [Semler] could use it if he wished and retrieved it from its storage space in the next room." Semler, however, testified that no one at Sears retrieved a ladder for his use, but, rather, that the ladder he used was leaning against the heating unit upon his arrival.

Neal's deposition testimony and statement could be viewed as creating an issue of fact with respect to whether, upon Semler's arrival at Sears, the ladder was retrieved by Neal or was merely leaning against the heating unit. In concluding that Neal did not retrieve the ladder for Semler's use, the district court found:

Semler emphatically disagrees with Neal's account. While Semler does not remember Neal being present at the product service center, he specifically denies asking Neal for a ladder. In fact, Semler reiterates throughout his testimony that a ladder was present in the product service center when he arrived, leaning against the heater unit. To say that Semler is entrenched in his position is an understatement. Neal, on the other hand, is less sure of his position.

Virtually all of Neal's testimony concerning a ladder is prefaced with the word "probably." For example, Neal testified that he "probably" selected a ladder for Semler; that he "probably" helped Semler find a ladder; and that he "probably" propped a ladder up against the wall. When he was not speculating about what happened concerning a ladder, Neal testified that he could not recall. Finally, Neal qualified all of his testimony by concluding that "I can't say for 100 percent certain that I got him [Semler] a ladder."

So, even though an argument could be made that a fact issue exists concerning whether a ladder was leaning against the heater unit when Semler arrived in the product service center or was later provided by Neal, the court finds that all of the credible evidence supports the former. That is, there was a ladder leaning against the heater unit when Semler arrived in the product service center. Neal's qualified testimony about "probably" providing a ladder, in light of Semler's unqualified testimony, does not create a genuine issue of fact.

Neither Semler nor Waldinger specifically assigns or argues in their briefs that Neal's deposition or his statement creates an issue of fact as to whether Neal retrieved the ladder for Semler's use. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Scurlocke v. Hansen, ante* p. 548, 684 N.W.2d 565 (2004). As a result, we view the evidence to show that the ladder was leaning against the heating unit upon Semler's arrival at Sears.

DUTY TO PROVIDE SAFE PLACE TO WORK

In its determination that Sears owed no duty to provide Semler a safe place to work, the district court relied in part upon

*Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000). In *Ray*, we held:

> Generally, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. There are two recognized exceptions to the general rule. The employer of an independent contractor may be vicariously liable to a third party (1) if the employer retains control over the contractor's work or (2) if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor.

259 Neb. at 803, 612 N.W.2d at 249.

Finding, inter alia, that "[t]here is no evidence Sears retained control over Semler's work" and further that no rule of law imposed a nondelegable duty upon Sears, the district court determined that "no legal duty existed for Sears to protect Semler from injury."

Semler contends that the district court erred as a matter of law in applying the rule set forth in *Ray*. Semler argues that the rule articulated in *Ray* applies to the issue of an employer's vicarious liability for the acts of an independent contractor resulting in injury to third persons, and not to the direct negligence of Sears in providing a defective ladder to Semler, which direct negligence was the issue presented by the pleadings.

We concur that *Ray* does not apply in this circumstance. The pleadings in this case show that Semler is not contending that Sears is vicariously liable to him due to the acts of an independent contractor hired by Sears, over whom Sears retained control. Rather, the pleadings allege that Sears is liable to Semler for its direct negligence in providing a defective ladder for his use. As such, control of another is not the dispositive issue.

Semler cites to *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), asserting that *Parrish* provides the proper legal analysis. We disagree. In *Parrish*, the issue presented was once again vicarious liability. Specifically, the issue was whether the landowner, the Omaha Public Power District, retained sufficient control over the construction site to impose liability on the district for the alleged negligent acts of a subcontractor. It was in that context that we noted, as Semler argues,

that an owner in control and possession of his property owes a duty to provide a safe workplace to the employee of an independent contractor.

Sears responds by arguing that even if the district court's reliance on *Ray* was misplaced, the district court nevertheless reached the correct result. In support of its argument, Sears relies upon *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

In *Anderson*, the landowner, Nashua Corporation, hired Mike Anderson's employer, an independent contractor, to paint the interior of several underground storage tanks on Nashua's property. While painting an underground tank, the tank burst into flames, severely burning Anderson. In addressing Nashua's duty under the subheading "DIRECT NEGLIGENCE," we observed that in a landowner-independent contractor context, a landowner's duty to maintain the premises in a reasonably safe condition for business invitees had been modified and that in such context, such duty was limited to latent defects that the independent contractor or his employees did not have knowledge of. 246 Neb. at 431, 246 N.W.2d at 283. From this, Sears argues that the absence of rubber shoes was not latent and that, therefore, Sears breached no duty to Semler. Given the pleadings and evidence admitted at the summary judgment hearing, we conclude that *Anderson* is also inapplicable.

■ Nashua's direct negligence in *Anderson* was considered, inter alia, in the context of premises liability. However, not every negligence action involving an injury suffered on someone's land is properly considered a premises liability case. See, *Whalen v. U S West Communications*, 253 Neb. 334, 346, 570 N.W.2d 531, 540 (1997) (case is not one of premises liability but instead "involves injury caused by misuse of defective equipment"); *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983) (case not one of premises liability, but instead involved active negligence of defendant).

■ Under a premises liability theory, a court is generally concerned with either a condition on the land, see, e.g., *John v. 00 (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990); *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982); Restatement (Second) of Torts § 343 (1965), or the use of

the land by a possessor, see, e.g., *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999); *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999); Restatement, *supra*, §§ 341 A and 344.

Nowhere in Semler's petition is it alleged that his injuries were due to Sears' failure to protect him from a condition or activity existing upon Sears' land. Rather, Semler's petition alleges that Sears furnished a ladder for Semler and that Sears' negligence was based upon this act. As Semler argues in his brief, he "is suing Defendant Sears for its direct negligence in supplying a defective ladder for his use on its premises." Brief for appellant at 12. Semler's petition and the evidence received by the district court do not implicate *Anderson*'s premises liability analysis. Having concluded that neither *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000); *Anderson, supra*; nor *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), provides the appropriate legal analysis for determining Sears' duty, we turn to one of Semler's and Waldinger's theories raised by the pleadings and considered by the district court, namely Semler's contention that Sears breached a duty to Semler in supplying an unsafe ladder.

## RESTATEMENT (SECOND) OF TORTS § 392:
### SUPPLIER OF CHATTEL

Semler and Waldinger rely on the Restatement, *supra*, § 392 in support of their argument that a material issue of fact exists as to whether Sears owed Semler a duty in supplying the ladder. In addressing Semler's and Waldinger's argument, the district court found that there was no genuine issue of material fact to support the contention that Sears supplied the ladder and that as such, § 392 did not create a duty on Sears' behalf.

The Restatement, *supra*, § 392 at 319, provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

The Restatement, *supra*, comment *e*. at 321-22, discusses the definition of supplying a chattel for one's business purposes:

One who employs another to erect a structure or to do other work, and agrees for that purpose to supply the necessary tools and temporary structures, supplies them to the employees of such other for a business purpose. This is true irrespective of whether the structure or work when finished is to be used for business or residential and social purposes. On the other hand, if it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business purposes.

Semler and Waldinger contend that the presence of the ladder leaning against the heating unit upon Semler's arrival, together with the fact that no Sears employee attempted to stop Semler from using the ladder, creates a genuine issue of fact as to whether Sears supplied the ladder. In his deposition, Semler testified in relevant part as follows:

[Sears' counsel:] Back in December of '97, what equipment did Waldinger provide you?

[Semler:] I have — Waldinger buys every tool I need. I have no tool expense. I have a — my van is full of tools, hand tools, torches, saws, and on the top of my van there is a step ladder and an extension ladder.

Q Does Waldinger provide you the truck as well?
A Yes.

. . . .

Q [On December 22 of 1997, when you went to Sears, d]id you have your extension ladder with you?
A Yes.

. . . .

Q Does that ladder have rubber soles on it?

A Yes.

. . . .

Q Does Waldinger have any policies, to your knowledge, about using Waldinger equipment only?

. . . .

A I'm not sure if there was a strict policy as to using other people's tools. We shouldn't have to, and we don't normally. But whether there was a strict policy on paper, I don't know.

Q Did they ever discuss that in any of the safety training that you had?

. . . .

A Yeah.

Q Okay. What would they say about that?

A Well, you know, a company the size of Waldinger shouldn't borrow that stuff. So we don't borrow tools.

. . . .

Q Back in 1997, was it common for you [Semler] to use equipment other than Waldinger equipment?

A No.

. . . .

Q That day you choose not to use the ladder you had brought; is that correct?

A That's right.

Q Why did you choose that?

A Because there was already a ladder on it — on the unit.

Q But you certainly had an opportunity to have used your own ladder; isn't that right?

A I could have taken theirs down and put mine up, yes.

The record contains no evidence of any contract setting forth which party was to provide tools for Semler's repair work. However, as Semler's testimony shows, Semler arrived at Sears the day of the accident with a plethora of tools, including an extension ladder. Indeed, Semler testified that it was not Waldinger's policy to borrow tools and, further, that he could have used his ladder to perform the necessary repair work but chose not to. As the district court appropriately observed in finding that Sears did not provide the ladder for Semler's use, "[t]he ladder was present when Semler arrived and he elected to use the

ladder . . . notwithstanding that a ladder provided by Waldinger was available to him and that the use of Sears' ladder was in contravention of Waldinger's policy."

Viewing the evidence in a light most favorable to Semler, and giving to him the benefit of all reasonable inferences, we determine that the district court did not err in concluding that there is no genuine issue as to whether Sears supplied the ladder for Semler's use. At most, the presence of the ladder leaning against the heating unit could be viewed as a "favor to the person [Semler] doing the work." See Restatement (Second) of Torts § 392, comment *e.* at 322 (1965). In such instance, its availability would be nothing more than a mere "gratuity," the Restatement would not apply, and no duty would be owed by Sears to Semler. Having determined that there is no genuine issue of material fact that Sears supplied the ladder to Semler, we find the district court did not err in concluding that the Restatement was not applicable.

STATUTORY DUTY

Semler and Waldinger next argue that in connection with Semler's use of Sears' ladder, Sears owed a nondelegable duty to Semler. Their argument is premised primarily upon Neb. Rev. Stat. § 48-425 (Reissue 2004). The district court found that § 48-425 "is not applicable to the facts of this case." Although Waldinger's brief contains a passing reference to the ladder creating an " 'abnormally dangerous condition,' " brief for cross-appellant Waldinger at 9, there is no specific argument in either Semler's or Waldinger's briefs claiming that Semler's work involved special risks or dangers. We will therefore limit our discussion to the issues specifically argued. See *Scurlocke v. Hansen, ante* p. 548, 684 N.W.2d 565 (2004).

A consideration of whether § 48-425 imposes a nondelegable duty upon Sears involves statutory interpretation. Statutory interpretation is a question of law in connection with which an appellate court has an obligation to reach a conclusion independent of the determination reached by the trial court. *Holm v. Holm,* 267 Neb. 867, 678 N.W.2d 499 (2004).

■ Section 48-425 provides in relevant part that "[a]ll scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances used in the erection, repairing, alteration, removal

or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed in a safe, suitable and proper manner." Section 48-425 is part of Nebraska's health and safety regulations. See Neb. Rev. Stat. §§ 48-401 to 48-446 (Reissue 2004). In *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994), we considered the issue of whether these regulations apply in an employer-independent contractor relationship. In determining that they do not apply, we stated:

> At issue is, To whom and under what circumstances do the health and safety regulations apply?
>
> First, regarding to whom the regulations apply, we find instructive the case of *Quist v. Duda*, 159 Neb. 393, 67 N.W.2d 481 (1954). In *Quist*, this court was confronted with the issue of whether one of the health and safety regulations applied to a landlord who owned an office building-parking garage. Our holding, that the regulations did not apply to the landlord, was not based upon any express statement, but upon the words used in the act. The words "employer" and "employee" were used throughout the act. From this language, we determined that the Legislature intended that the act's application be limited to the relationship of employer and employee. Although we were not specifically concerned with §§ 48-403 and 48-422 in *Quist*, those sections were a part of chapter 48, article 4, as was the section we were concerned with. Neither of those sections has been amended since *Quist* was decided. Although in these specific sections there are not as many references to the employer-employee relationship, we are convinced that the Legislature intended to limit the application of these sections to the employer-employee relationship. Thus, since that relationship does not exist between Nashua and Anderson, §§ 48-403 and 48-422 are not applicable here.

*Anderson*, 246 Neb. at 428-29, 519 N.W.2d at 282.

The reasoning in *Anderson* is still sound. In so concluding, we note that § 48-425 is part of chapter 48, article 4, of the Nebraska Revised Statutes, and that neither § 48-425, nor the collection of statutes composing chapter 48, article 4, has been amended in any manner which would call into question this court's rationale in *Anderson, supra,* and *Quist v. Duda*, 159 Neb.

393, 67 N.W.2d 481 (1954). Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Chapin v. Neuhoff Broad.-Grand Island, Inc., ante* p. 520, 684 N.W.2d 588 (2004); *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001). We conclude that the health and safety regulations do not apply and that, in turn, Sears did not owe a nondelegable duty to Semler. The district court's finding that § 48-425 is inapplicable was not error.

## SIMPLE-TOOL DOCTRINE

In his third assignment of error, Semler contends the district court erred in concluding that the simple-tool doctrine relieved Sears of any duty it may have owed Semler as a supplier of the ladder. The simple-tool doctrine operates to relieve an employer of certain duties in the course of providing tools to its employees. See, *Anderson v. Moser*, 169 Neb. 134, 98 N.W.2d 703 (1959); *Brown v. Swift & Co.*, 91 Neb. 532, 136 N.W. 726 (1912); *Vanderpool v. Partridge*, 79 Neb. 165, 112 N.W. 318 (1907).

Having already determined that the district court did not err in finding that Sears did not supply the ladder, we need not address the applicability of the doctrine. Semler's third assignment of error is also without merit.

## CONCLUSION

The decision of the district court granting Sears' motion for summary judgment is affirmed. In so affirming, we recognize that our reasoning in concluding that Sears owed no duty to Semler differs slightly from the reasoning employed by the district court. However, where the record demonstrates the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by trial court, an appellate court will affirm. See *Jessen v. Malhotra*, 266 Neb. 393, 665 N.W.2d 586 (2003).

AFFIRMED.