T.C. Memo. 2003-221

UNITED STATES TAX COURT

MARLIN G. SPRINGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13228-00.                    Filed July 23, 2003.

<u>Burnell E. Steinmeyer, Jr.</u>, and <u>Larry R. Baumann</u>, for
petitioner.

<u>Albert B. Kerkhove</u> and <u>Henry N. Carriger</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's 1996 Federal income tax of $20,394.  The sole issue
for decision is whether a payment of $50,000 petitioner made to

his ex-wife in 1996 is deductible as alimony under section 215(a).[1]

Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Danbury, Nebraska, at the time he filed his petition.

Petitioner and Pamela Lynn Springer (Ms. Springer) were married on November 27, 1970, in Lebanon, Nebraska.[2] On January 10, 1995, pursuant to a "Decree of Dissolution" (the divorce decree), the marriage between petitioner and Ms. Springer was dissolved in the District Court of Red Willow County, Nebraska. Petitioner and Ms. Springer also entered into a "Property Settlement and Custody Agreement" (the marital settlement), effective January 10, 1995, which was incorporated into the divorce decree.[3]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The record in this case does not provide any information regarding the status of Ms. Springer's 1996 taxable year and whether she reported the payment in dispute as income.

[3]The divorce decree stated that "the Property Settlement Agreement entered into between the parties is hereby approved, and the property and debts of the parties are divided and allocated as set forth therein." For convenience, subsequent references to the marital settlement and the divorce decree
(continued...)

The marital settlement was divided into 28 articles. In the preamble, petitioner and Ms. Springer stated that they wished to enter into a voluntary agreement to determine their respective property rights and all other matters relating to the dissolution of their marriage, including matters relating to child custody and support, spousal support/alimony, division of property, payment of debts, payments of attorney's fees, and other matters incident to the dissolution proceedings. The marital settlement reflected that petitioner and Ms. Springer were both represented by legal counsel throughout the entire proceeding and entered into the settlement "upon mature consideration and after ample opportunity to seek the advice of separate counsel".

Article 6, entitled "ALIMONY", required petitioner to pay "alimony for the support and maintenance" of Ms. Springer. The article stated:

> The husband shall pay, through the Clerk of the District Court of Red Willow County, Nebraska, non-modifiable alimony for the support and maintenance of the wife in the sum of One Thousand Five Hundred Dollars ($1,500.00) per month, commencing upon the first day of February, 1995, and continuing to be due and payable on the first day of each month thereafter for One Hundred Twenty (120) months, or until the death of either party or the remarriage of recipient, if any such event occurs prior to said date.
>
> In addition to the foregoing alimony, the husband shall pay, through the Clerk of the District Court of Red Willow County, Nebraska, non-modifiable alimony for

---

[3](...continued)
collectively are to the divorce documents.

the support and maintenance of the wife in the sum of Fifty Thousand Dollars ($50,000.00) per year for a period of five (5) years, commencing on February 1, 1996, and continuing to be payable on February 1, 1997, on February 1, 1998, on February 1, 1999 and on February 1, 2000. This portion of the alimony to be paid by the husband shall not terminate upon either the death of the husband or the remarriage of the wife. These alimony payments are due on the first day of February each year as set forth above and if not paid shall bear interest at the then current judgment rate as prescribed by the Nebraska Supreme Court.

Other articles of the marital settlement discussed property rights and other marriage dissolution matters. Article 5 required petitioner to make monthly child support payments. Article 7 provided for the division of certain real estate between petitioner and Ms. Springer. Articles 8 through 13 addressed the division of motor vehicles, bank accounts, business interests, retirement benefits, household items and personal effects, and life insurance, investments, and retirement plans. Article 14 stated that petitioner would be entitled to claim dependency exemptions for his and Ms. Springer's children. Under article 15, petitioner assumed responsibility for various debts and liabilities incurred by him and Ms. Springer during the course of their marriage. Finally, article 16, entitled "ADDITIONAL PROPERTY DIVISION", stated:

The wife shall be awarded an additional $143,000.00, payable on or before February 1, 1995, and $50,000.00 plus 6% interest from date of decree to be paid on February 1, 2001, as additional property to equalize property distribution. Husband shall have the right to pay the interest annually or totally with the 2001 payment.

The marital settlement stated that it was binding on the parties and their respective legal representatives, successors, and assigns immediately following the dissolution of the marriage. Article 25 of the marital settlement provided that "No modification of this Agreement shall be binding upon either of the parties unless reduced to writing and subscribed to by both parties unless ordered by the court." Article 26, entitled "CAPTIONS", stated that "Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof."

The divorce decree stated that the marital settlement agreement was approved. The divorce decree contained the following provision ordering petitioner to make payments to Ms. Springer:

> IT IS FURTHER ORDERED that respondent shall pay, through the Clerk of the District Court of Red Willow County, Nebraska, non-modifiable alimony for the support and maintenance of the petitioner in the sum of One Thousand Five Hundred Dollars ($1,500.00) per month, commencing upon the first day of February, 1995, and continuing to be due and payable on the first day of each month thereafter for One Hundred Twenty (120) months, or until the death of either party or the remarriage of recipient, if any such event occurs prior to said date. In addition to the foregoing alimony, the respondent shall pay, through the Clerk of the District Court of Red Willow County, Nebraska, non-modifiable alimony for the support and maintenance of the petitioner in the sum of Fifty Thousand Dollars ($50,000.00) per year for a period of five (5) years, commencing on February 1, 1996, and continuing to be payable on February 1, 1997, on February 1, 1998, on

February 1, 1999 and on February 1, 2000. This portion of the alimony to be paid by the respondent shall not terminate upon either the death of the respondent or the remarriage of the petitioner. These alimony payments are due on the first day of February each year as set forth above and if not paid shall bear interest at the then current judgment rate as prescribed by the Nebraska Supreme Court. All alimony ordered herein shall be a judgment from the date of decree until paid in full or released.

The divorce decree also generally incorporated the agreements contained in the other articles of the marital settlement.

Petitioner made the $50,000 payment to Ms. Springer in 1996 in satisfaction of article 6 of the marital settlement and as ordered in the divorce decree.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 1996. On the Form 1040, petitioner claimed a deduction for alimony paid of $68,000.[4] On or about June 6, 2000, respondent commenced his examination of petitioner's 1996 return. On September 22, 2000, respondent issued a notice of deficiency to petitioner for the taxable year 1996. In the notice, respondent disallowed $50,000 of the claimed deduction for alimony paid on the ground that "Lump-sum cash or property

---

[4]Of this amount, $50,000 was attributable to the annual payment, and it appears that the remaining $18,000 was attributable to the monthly payments of $1,500 (12 months x $1,500 = $18,000).

settlements are not deductible as alimony."[5]  Petitioner timely filed a petition to this Court seeking a redetermination.

Discussion

The parties dispute the proper characterization of petitioner's $50,000 payment to Ms. Springer in 1996.  Respondent determined that the $50,000 payment was not deductible by petitioner because it was in the nature of a property settlement payment.  Petitioner claims the payment is deductible as alimony under section 215(a).  The parties' respective positions are based on contrary interpretations of the divorce documents and applicable Nebraska law.

Generally, the Commissioner's determination bears a presumption of correctness, and the burden of proof rests with the taxpayer.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The fact that a case is submitted fully stipulated does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof.  Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 5 (1995), affd. 103 F.3d 104 (10th Cir. 1996).

---

[5]Respondent also decreased petitioner's total itemized deductions by $1,500.  This was a computational adjustment based on the increase in petitioner's adjusted gross income that resulted from respondent's disallowance of $50,000 of the claimed deduction for alimony paid.  No other adjustments were made to petitioner's 1996 return.

In certain circumstances, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a). Section 7491(a) applies only if an individual taxpayer complies with substantiation requirements, maintains required records, and cooperates fully with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2). Credible evidence has been described as "'the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted'". Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H. Conf. Rept. 105-599, at 240 (1998), 1998-3 C.B. 755, 994). Section 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

The parties stipulated that the examination of petitioner's 1996 Federal income tax return commenced after the effective date of section 7491, and petitioner has established that he made the $50,000 payment to Ms. Springer in 1996 pursuant to the provisions in the marital settlement and the divorce decree requiring the payment of "alimony for the support and

maintenance" of Ms. Springer.  Although the parties have not addressed petitioner's compliance, there is no indication that petitioner has failed to comply with substantiation requirements, did not maintain required records, or failed to cooperate with reasonable requests by respondent for witnesses, information, documents, meetings, and interviews.  However, the parties' respective positions are based on their contrary interpretations of the divorce documents and Nebraska law.  Our resolution of the issue presented is ultimately based on our interpretations of the divorce documents and Nebraska law; therefore, which party bears the burden of proof is not dispositive to our holding.[6]

Petitioner claims that the $50,000 payment constitutes alimony; respondent contends that the payment was in the nature of a property settlement payment.  Generally, property settlements incident to a divorce are not taxable events and do not give rise to deductions or recognizable income.  Sec. 1041; Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).  Conversely, amounts received as alimony or separate maintenance payments are taxable to the recipient and deductible by the payor in the year paid.

_____

[6]This Court's interpretation of State law is generally a question of law and is reviewed de novo.  Hoover v. Commissioner, 102 F.3d 842, 844 (6th Cir. 1996), affg. T.C. Memo. 1995-183.

Secs. 61(a)(8), 71(a), 215(a).[7]  The phrase "alimony or separate maintenance payment" is defined in section 71(b)(1) as any cash payment satisfying the following four requirements:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Respondent concedes that petitioner's $50,000 payment to Ms. Springer in 1996 satisfies subparagraphs (A), (B), and (C) of section 71(b)(1).  The issue in dispute is whether the payment satisfies subparagraph (D).

If the terms of the divorce documents or Nebraska law would have required the annual payments of $50,000 to terminate on the

---

[7]Sec. 215(a) provides a general rule that "In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

death of Ms. Springer, then these payments are alimony under section 71 and deductible from petitioner's gross income under section 215(a). See Lovejoy v. Commissioner, 293 F.3d 1208, 1210 (10th Cir. 2002), affg. Miller v. Commissioner, T.C. Memo. 1999-273. The parties dispute (1) whether the divorce documents would have required termination of the annual payments on the death of Ms. Springer, and (2) whether the liability to make the annual payments would have terminated under Nebraska law. Additionally, respondent argues that the annual payments were intended to be "alimony in gross" under Nebraska law and that this implies that petitioner cannot deduct the $50,000 payment.

Current section 71 is the product of the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 795, and the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853. In Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183, the Court of Appeals for the Sixth Circuit explained that by the 1984 revision, "Congress specifically intended to eliminate the subjective inquiries into intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test." The statute as enacted in 1984 required that the divorce or separation instrument itself state that the liability to make payments would terminate on the payee's death. The 1986 amendment eliminated the requirement that the termination provision be stated in the instrument itself

and permitted reference beyond divorce instruments to State law to determine whether State law specifically provided that the payments in question would terminate on the payee's death.  In analyzing this change, the Court of Appeals for the Sixth Circuit explained:

> Although the 1986 amendment injected state law into the § 71(b)(1) inquiry, the purpose behind the 1984 revision still stands.  A court determining whether payments qualify as alimony as defined in § 71 will turn to state law only to determine whether state law, by requiring that the payments terminate upon the payee's death, ensures that the payments satisfy § 71(b)(1)(D).  Congress clearly did not intend courts to engage in the very sort of subjective inquiry that had prompted the 1984 revision. * * * [Id. at 846.]

In analyzing questions regarding termination of payments on the death of the payee, the statutory mandate of section 71 would have us first look at the language in the divorce instrument to determine whether liability survives the death of the payee and, if the instrument is not clear, then determine whether such liability terminates at death by operation of State law.  Id. at 845-846.  In this case, we hold that although the marital settlement attached to the divorce decree is not as clearly worded as it might be, the liability in question would have terminated at death pursuant to the divorce documents. Furthermore, we hold that the liability would have terminated at death pursuant to Nebraska law if the marital settlement is deemed to have failed to address the issue of termination.

I.   Terms of the Divorce Documents

Petitioner argues that the divorce documents provided for termination of the annual payments on the death of Ms. Springer. Petitioner notes that the documents specifically state that the monthly payments of $1,500 would terminate on the death of either party or the remarriage of Ms. Springer, whereas the annual payments would not terminate on the death of petitioner or the remarriage of Ms. Springer.  Petitioner contends that the only reasonable interpretation of the two provisions is that the annual payments would also terminate on the death of Ms. Springer.

Respondent contends that the annual payment of $50,000 is not deductible as alimony by petitioner because the divorce documents do not specifically state that the annual payments would terminate on the death of Ms. Springer.  Respondent claims that the annual payment provision should be analyzed separately from other payments and property transfers included in the marital settlement.  Respondent argues that the $50,000 payment made in 1996 is not deductible if only the language relating to the annual payments is considered.

Generally, different types of payments made pursuant to a divorce decree are not treated as part of a single stream of payments, but rather each type of payment is analyzed separately to determine its proper characterization.  Oman v. Commissioner,

767 F.2d 290, 293 (6th Cir. 1985), affg. T.C. Memo. 1984-357;

Bernstein v. Commissioner, 622 F.2d 442, 445-446 (9th Cir. 1980),

affg. T.C. Memo. 1978-84; Bartsch v. Commissioner, 18 T.C. 65,

68-69 (1952), affd. per curiam 203 F.2d 715 (2d Cir. 1953).

Respondent, relying on the general rule above,[8] argues that we

"should not lump the payments together to arrive at a

'consolidated' classification", and that the two paragraphs

should be interpreted as if they have separate termination

provisions.

Respondent misapplies the general rule in the context of

this case.  The cases applying the general rule that different

types of payments are not to be treated as a single stream of

payments generally dealt with taxpayers attempting to treat

periodic payments and installment payments as a single stream of

periodic payments.  Under previous versions of sections 71 and

215, periodic payments made pursuant to a decree of divorce or

---

[8]Other cases applying the general rule include White v.
Commissioner, 770 F.2d 685 (7th Cir. 1985), revg. 82 T.C. 222
(1984); Houston v. Commissioner, 442 F.2d 40 (7th Cir. 1971),
affg. Schwab v. Commissioner, 52 T.C. 815 (1969); Fidler v.
Commissioner, 231 F.2d 138 (9th Cir. 1956), affg. as modified 20
T.C. 1081 (1953); Estate of Smith v. Commissioner, 208 F.2d 349
(3d Cir. 1953), affg. in part and revg. in part a Memorandum
Opinion of this Court; Martin v. Commissioner, 73 T.C. 255
(1979); Hunt v. Commissioner, 22 T.C. 561 (1954); Glasgow v.
Commissioner, 21 T.C. 211 (1953); Norton v. Commissioner, 16 T.C.
1216 (1951), affd. 192 F.2d 960 (8th Cir. 1951); Burkle v.
Commissioner, T.C. Memo. 1986-394; Miller v. Commissioner, T.C.
Memo. 1981-15; Coker v. United States, 327 F. Supp. 169 (D. Neb.
1971), affd. 456 F.2d 676 (8th Cir. 1972); Tate v. United States,
207 F. Supp. 426 (E.D. Tenn. 1962).

separate maintenance were deductible by the payor.  Installment payments discharging the obligation to pay a principal sum generally were not periodic payments and thus were not deductible by the payor.  An exception existed where installment payments were deemed periodic payments if the payments either (1) lasted or might have lasted more than 10 years from the date of the divorce decree, or (2) were contingent upon the death of either party, the payee's remarriage, or a change in the economic status of either party.[9]

In the cases respondent relies on, taxpayers attempted to qualify for the exceptions under prior law by arguing that installment payments and periodic payments were part of an overall plan for support and were to be viewed as a single stream of payments.  These cases involved attempts by taxpayers to "camouflage" installment payments by means of combining them with periodic payments.  Bernstein v. Commissioner, supra at 445.  The payment provisions in the cases under prior law contained contradictory terms or lacked any indication that they were intended to be read in conjunction with each other.  These factual scenarios are readily distinguishable from the instant situation.  Current law does not involve the issue of whether payments are periodic or installment payments, and petitioner is

---

[9]See Yoakum v. Commissioner, 82 T.C. 128, 136 (1984); former sec. 71(c)(1); former sec. 1.71-1(d)(3)(i) and (ii), Income Tax Regs.

not attempting to combine the payment periods contained in the two provisions to meet a periodicity requirement.[10]  This case presents a question of interpreting the provisions of the agreement regarding the effect of the payee's death, not an issue regarding consolidation of the stream of payments.

We find the cases respondent cites, and other cases applying the general rule prohibiting the merger of different types of payments, distinguishable from the instant case because those cases did not deal with a situation where the language in one payment provision of a divorce document made reference to another provision or indicated that the payment provision should be read in conjunction with another part of the document.  The present issue is whether it is appropriate to review the preceding paragraph to understand the language in question.  A well-established principle of contract law is that a writing is interpreted as a whole, and any writings which are part of the same transaction should be viewed together.  2 Restatement,

---

[10]We are unaware of any cases since the 1984 revision and 1986 amendment to sec. 71 applying the general rule prohibiting merger of different types of payments.  Although this does not necessarily mean that the general rule prohibiting merger of different types of payments does not apply because of the change in law, the factual circumstances in which the general rule was applied are not as prevalent under current law.  In any event, the facts and circumstances of this case are distinguishable from prior cases applying the general rule.

Contracts 2d, sec. 202 (1997).[11]  Additionally, an interpretation
that gives a reasonable meaning to all parts of a writing is
preferred to one that leaves portions of the writing meaningless.
Rink v. Commissioner, 47 F.3d 168, 171 (6th Cir. 1995), affg. 100
T.C. 319 (1993); Poison Creek Ranches #1, Ltd. v. Commissioner,
T.C. Memo. 1996-504; Washoe Ranches #1, Ltd. v. Commissioner,
T.C. Memo. 1996-495.  With these principles in mind, we proceed
to examine the divorce documents to determine whether they
provide that there was no liability to make the annual payments
for any period after the death of Ms. Springer.

Article 6 of the marital settlement is entitled "ALIMONY"
and contains two paragraphs dealing with recurring payments to
Ms. Springer.  Although the caption of article 6 is not
dispositive, the use of parallel language and the positioning of
the paragraphs together in this article is significant.  It is
also noteworthy that article 6 is separate and distinct from the
articles providing for the division of property.  The first
paragraph specifically states that these payments will continue

---

[11]Nebraska caselaw provides similar rules regarding the
interpretation of contractual agreements.  "'A contract must be
interpreted as a whole and, if possible, effect must be given to
every part thereof.'"  Husen v. Husen, 487 N.W.2d 269, 272 (Neb.
1992) (quoting Crowley v. McCoy, 449 N.W.2d 221, 244 (Neb. 1989))
(analyzing relationship between two payment provisions contained
in property settlement and divorce decree to determine effect of
the payee's remarriage on the payor's liability to make alimony
payments); see also Ruble v. Reich, 611 N.W.2d 844, 850 (Neb.
2000) ("We view a contract as a whole in order to construe it.").

to be due and payable for a period of 120 months, "or until the death of either party or the remarriage of recipient".  The second paragraph specifically provides that "This portion of the alimony" shall not terminate on the death of petitioner or the remarriage of Ms. Springer.[12]  Under the first paragraph, the alimony payments will terminate on the death of either party or the remarriage of Ms. Springer.  Unlike the monthly payments provided for in the first paragraph, the annual payments were not to terminate on either the death of petitioner or the remarriage of Ms. Springer.  "Reading the agreement from a reasonable, commonsense perspective", Estate of Goldman v. Commissioner, 112 T.C. at 323, and interpreting the writing as a whole, we believe that the initial listing of three events causing termination followed by the parallel paragraph specifically excluding only two of those events from termination implies that the occurrence of the third event would continue to cause termination of the payments.

Other language used by petitioner and Ms. Springer indicates that the annual payments would have terminated on the death of Ms. Springer.  The marital settlement uses the same phrase in describing the purpose of both the monthly and annual payments: "alimony for the support and maintenance of the wife".  This

---

[12]We note that in the divorce decree of the Nebraska court, the monthly and annual payment provisions are contained in the same paragraph.

phrase indicates that the payments were intended to support <u>Ms. Springer</u>, as contrasted with the payments provided by article 16 to support her estate or to equalize the property distribution between her and petitioner.  Interpreting the divorce documents to mean that the annual payments would not have terminated on the death of Ms. Springer would lead to the result that if she had died, then petitioner (or his estate) would have had to make payments for Ms. Springer's "support and maintenance" after her death.  It is illogical and contrary to the accepted use of these terms in such documents for "support" and "maintenance" to be required by a decedent.[13]  Furthermore, acceptance of respondent's position would effectively rewrite the second paragraph to state that the annual payments would not terminate on the death of petitioner <u>or Ms. Springer</u>, or on the remarriage of Ms. Springer.

Contrary to respondent's contentions, our analysis of the issue presented does not result in "lumping the payments" together or making a "consolidated classification" in violation of the general rule prohibiting the merger of different types of payments into a single stream of payments.  Rather, our interpretation is consistent with well-established principles of

---

[13]This case is distinguishable from <u>Cunningham v. Commissioner</u>, T.C. Memo. 1994-474, because the term of the annual payments in this case is consistent with a period to support the postdivorce transition of the payee spouse.

contract law that writings should be interpreted as a whole and the interpretation should give a reasonable meaning to all parts of the writing. Accordingly, we find that the divorce documents provide that the annual payments were to terminate on the death of Ms. Springer; thus, the $50,000 payment made by petitioner to Ms. Springer in 1996 is deductible as alimony under section 215(a).

II. Nebraska Law

Even if the terms of the divorce documents did not provide for termination on the death of Ms. Springer, petitioner would still prevail as long as the annual payments would have terminated under Nebraska law.[14]  On brief, the parties addressed whether Nebraska statutory law provides for the termination of the annual payments under the facts of this case. The relevant statute, Neb. Rev. Stat. section 42-365 (1998), provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. Reasonable security for payment may be required by the court. Unless amounts

---

[14]For purposes of this discussion, we assume that the divorce documents did not provide for termination of the annual payments on the death of Ms. Springer.

> have accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown, but when alimony is not allowed in the original decree dissolving a marriage, such decree may not be modified to award alimony.  <u>Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient.</u>  [Emphasis added.]

The pertinent issue in the instant case is whether petitioner and Ms. Springer "otherwise agreed" in the marital settlement (or the court ordered in the divorce decree) that the annual payments would not terminate on the death of Ms. Springer.

Respondent, citing <u>Watters v. Foreman</u>, 284 N.W.2d 850 (Neb. 1979), argues that Neb. Rev. Stat. section 42-365 does not apply because the annual payment provision in article 6 of the marital settlement was not silent as to all termination procedures.  The issue in <u>Watters</u> was whether the remarriage of the wife resulted in the termination of alimony by operation of Neb. Rev. Stat. section 42-365.  Under the decree, the husband was required to pay the wife $1,000 per month for a period of 10 years and 1 month.  <u>Id.</u> at 852.  The decree stated that the payments were to cease on the death of the wife but not on the death of the husband.  <u>Id.</u>  The decree was silent regarding the husband's liability to make the payments if the wife remarried.  <u>Id.</u>

The Supreme Court of Nebraska had to decide whether the parties had "otherwise agreed" within the meaning of the statute and, therefore, the remarriage did not terminate the husband's

liability to make the monthly alimony payments.  The court

initially noted that the value of the marital estate appeared to

be in excess of $200,000, but that the wife was receiving only

the monthly payments totaling $18,500, a 1973 Cadillac, some

household goods, and payment of $5,000 of her attorney's fees.

Id.  The court then examined the language of the divorce decree

and held:

> Where the parties by their agreement in writing, or the
> court by its decree, provide that a specific amount of
> alimony shall be paid for a specific period of time,
> and shall terminate only upon the occurring of a
> specific event set out in the agreement or decree and
> otherwise shall not be subject to amendment or
> revision, the payment of such alimony shall terminate
> only upon the happening of the event set out in the
> agreement or decree. * * * [Id. at 854.]

Thus, the fact that the husband and wife provided for a

termination event and the agreement was not modifiable resulted

in the nonapplicability of Neb. Rev. Stat. section 42-365.

Later, in Kingery v. Kingery, 320 N.W.2d 441 (Neb. 1982),

the issue was whether a nonmodifiable provision requiring that

payments be made until "paid in full" precluded application of

Neb. Rev. Stat. section 42-365 because the parties had "otherwise

agreed" within the meaning of the statute.  The decree of

dissolution was silent regarding the effect of death or

remarriage, and the husband argued that on his ex-wife's

remarriage Neb. Rev. Stat. section 42-365 operated to relieve him

of liability for the remaining payments to her.  Id. at 441-442.
The court noted:

> The words "terminate upon the death of either party or
> the remarriage of the recipient," clearly show that
> this portion of the statute needs no order of court to
> effect termination.  The alimony terminates by
> operation of law when the condition occurs. * * * [Id.
> at 443.]

Thus, the court recognized that if Neb. Rev. Stat. section 42-365
applies, liability to make payments terminates without a court
order or modification of the divorce document.  The court
ultimately held that the order of the court that the alimony be
"paid in full" did not evidence an intention that the alimony
order should not terminate on remarriage.  Id. at 444.

In Pettid v. Commissioner, T.C. Memo. 1999-126, we applied
Neb. Rev. Stat. section 42-365 in a situation where the divorce
instruments were silent regarding whether payments would
terminate on the death of either party or the remarriage of the
payee spouse.  We distinguished the situation in Watters v.
Foreman, supra, on the ground that the divorce decree in that
case "expressly dealt with termination and provided that
termination would occur upon the death of the payee spouse."
Because the divorce instrument in Pettid was silent about
termination and the effect that the death of either party or the
remarriage of the payee spouse would have on the payor's
liability to make the payments, we held that the parties had not
"otherwise agreed" in writing regarding the effect of the death

or remarriage of the payee spouse on the payor spouse's liability to make the payments.

Additionally, we addressed the Commissioner's argument that a provision in the instrument stating that the agreement was binding on the parties and their heirs, assigns, and personal representatives indicated that the payor spouse or his estate might be liable to make payments to the payee spouse after her death. We declined to read the binding agreement provision so broadly "as to require the payments to continue after * * * [the payee spouse's] death or to constitute an agreement of the parties that the alimony order will not terminate on * * * [the payee spouse's] death, as otherwise required by Neb. Rev. Stat. section 42-365."[15]

Finally, we examined the Supreme Court of Nebraska's holding in Kingery v. Kingery, supra. We noted that under the holding of that case, if Neb. Rev. Stat. section 42-365 applies, a payor's liability to pay alimony terminates automatically on the death of the payee. Like the court in that case, we disagreed with the position that the statutory direction can be defeated by a general contractual provision prohibiting modification of the agreement.

---

[15]The marital agreement in this case contains a similar "binding agreement" provision. Respondent has not argued in this case that this provision indicates or implies that the annual payments were intended to survive the death of Ms. Springer.

In the instant case, the second paragraph of article 6 of the marital settlement states that the liability to make the annual payments to Ms. Springer will not terminate on either the death of petitioner or the remarriage of Ms. Springer. Unlike the situation in Watters v. Foreman, 284 N.W.2d 850 (Neb. 1979), the parties did not specifically state that the annual payments would terminate on death or remarriage. Instead, the parties chose to specifically exclude the death of petitioner or the remarriage of Ms. Springer as events causing termination. In Watters v. Foreman, supra, the parties stated one situation in which the payments would terminate and one situation in which they would not. The court found that the parties' statement that the payments would terminate on the wife's death effectively limited the termination events to that specific occurrence and precluded application of Neb. Rev. Stat. section 42-365 to statutorily terminate the payments on the wife's remarriage.

Respondent's position regarding the application of Watters in this case would lead to an incongruous result. Here, the parties did not provide a termination event. Rather, they specifically excluded from termination two of the three events previously listed as causing termination in the prior related paragraph. The specific exclusion of two of the three events from termination, in this context, without reference to the third event, indicates that the third terminating event is still

viable. Applying <u>Watters</u> would in effect add language to the agreement providing that Ms. Springer's death would not cause termination even though the structure of the agreement indicates the opposite. If there is any doubt about the intent of the divorce documents, there is clearly no basis to have Neb. Rev. Stat. section 42-365 operate to provide a result that is directly opposite to that implied in the agreement and contrary to the result the Nebraska statute would provide in the absence of an agreement of the parties on this point.

Finally, review of the entire marital settlement indicates that petitioner and Ms. Springer attempted to provide a reasonable division of the marital estate. Other provisions of the marital settlement and the divorce decree specifically provided for child support payments and the division of assets and liabilities (e.g., motor vehicles, real estate, bank accounts, business and investment items, retirement benefits and plans, personal property, and life insurance items) between petitioner and Ms. Springer. Additionally, article 16 of the marital settlement specifically provided for lump-sum payments to be made by petitioner to Ms. Springer "as additional property to equalize property distribution." We are not concerned in this case, as it appears the court was in <u>Watters v. Foreman</u>, <u>supra</u>, that one spouse received considerably less than a fair and equitable division of the marital estate, and that payments

labeled as alimony for support and maintenance were more in the nature of property settlement payments. For the reasons discussed above, we hold that petitioner and Ms. Springer did not "otherwise agree" within the meaning of Neb. Rev. Stat. section 42-365.

III. Alimony in Gross

Respondent argues that the requirements that the annual payments were not to terminate on the death of petitioner or the remarriage of Ms. Springer were inserted into the marital settlement to characterize the annual payments as "alimony in gross" under Nebraska law. Respondent implies that this is the reason the annual payment provision lacks a specific reference regarding the effect of Ms. Springer's death, not that the two payment provisions were intended to be read in conjunction and terminate the liability to make the annual payments after the death of Ms. Springer. Respondent relies on Ball v. Ball, 159 N.W.2d 297 (Neb. 1968), to support his position.

In Ball v. Ball, supra at 300, the Supreme Court of Nebraska discussed the difference between "alimony" and "alimony in gross". The court stated:

> The distinction between "alimony" and "alimony in gross" may be gathered from the accepted definitions of the two terms. "Alimony", which signifies literally nourishment or sustenance, is an allowance for support and maintenance, or, as has been said, a substitute for marital support. It is the allowance which a husband may be compelled to pay to his wife or former wife for her maintenance when she is living apart from him or

has been divorced. "Alimony in gross, or lump-sum alimony," is fundamentally the award of a definite sum of money; and if the sum is payable in instalments the payments run for a definite length of time. The sum is payable in full, regardless of future events such as the death of the husband or the remarriage of the wife. Gross alimony becomes a vested right from the date of the rendition of the judgment, and the manner of its payment in no wise affects its nature or effect. The fact that the award is payable in installments is not determinative of the question whether it is gross alimony or periodic alimony. On the other hand, alimony in general, or installment alimony, contemplates periodic payments of a definite sum for the indefinite future, and terminates on the death of either party or the remarriage of the wife. * * * The phrase "alimony in gross" or "gross alimony" is always for a definite amount of money, the payment is always for a definite length of time, and it is always a charge on the estate of the husband and is not modifiable. It, therefore, appears that a decree providing for "alimony in gross," constituting a final judgment not subject to modification, must incorporate each and every one of the following propositions to meet the recognized requirements for this type of judgment, to wit: (1) The award must be for a definite sum or for installments payable over a definite period of time; (2) it must be payable in full regardless of the death or remarriage of the judgment creditor; and (3) it cannot terminate on the death of the judgment debtor. [Citations omitted.]

Relying on this passage, respondent argues on brief that the specific exclusion from termination of the death of petitioner and the remarriage of Ms. Springer was intended to qualify the annual payments as alimony in gross.

The Ball case predated the adoption of Neb. Rev. Stat. section 42-365. Murrell v. Murrell, 440 N.W.2d 237, 239 (Neb. 1989). The Supreme Court of Nebraska has recognized that the statute applies to all orders for alimony, and no distinction is

made between alimony and alimony in gross. Kingery v. Kingery, 320 N.W.2d at 443; Euler v. Euler, 295 N.W.2d 397, 399 (Neb. 1980). Thus, the liability to make payments which might otherwise be characterized as alimony in gross under Nebraska law will still terminate on the death of either party or the remarriage of the payee spouse except as otherwise agreed by the parties or ordered by the court.

Respondent agrees with the above principles; however, he asks the Court to "recognize that the annual alimony termination provisions at issue here are consistent with the trade or local usage for payments of alimony in gross." Although respondent's position is not entirely clear, he appears to argue that petitioner and Ms. Springer intended the annual payments to be alimony in gross and that this intention implies that the annual payments would not have terminated on the death of Ms. Springer. Respondent claims that the annual payment in issue is properly characterized as alimony in gross because it was part of a series of payments for a definite period of time, the annual payments were not modifiable, and the parties provided that the annual payments would not terminate on the death of petitioner or the remarriage of Ms. Springer.

The fact that petitioner was required to make annual payments for a period of 5 years is not determinative of the question of whether the payments constitute alimony or alimony in

gross.  See Ball v. Ball, supra at 300.  The language of the divorce documents does not reflect that the payments were intended to be part of a definite sum payable and, as discussed previously, we believe that the liability to make the payments was subject to the contingency of the death of Ms. Springer.  Nor do we believe that the fact that the annual payments were not modifiable means that the payments were alimony in gross.  Indeed, in Kingery v. Kingery, supra, the nonmodifiable provisions did not prevent application of Neb. Rev. Stat. section 42-365.  Finally, in Ball v. Ball, supra at 300, the court stated that alimony in gross must incorporate "each and every one" of the requirements that the award be for a definite sum (or for installments payable over a definite period of time), be payable in full regardless of the death or remarriage of the payee spouse, and not terminate on the death of the payor spouse.  The divorce documents in this case lack the specific requirement that the annual payments be payable in full regardless of the death of the payee spouse, Ms. Springer.

We also note that the passage in Ball v. Ball, supra at 300, relied on by respondent expressly describes alimony (as distinguished from alimony in gross) as "an allowance for support and maintenance".  As discussed earlier, the divorce documents stated that the annual payments were for the "support and maintenance" of Ms. Springer.  The use of this phrase in the

annual payment provision is at odds with respondent's contention that the parties intended for the annual payments to qualify as alimony in gross and not to terminate on the death of Ms. Springer.

Respondent's contention regarding trade or local usage is inconsistent with the definition provided in <u>Ball v. Ball</u>, <u>supra</u>, and with <u>Kingery v. Kingery</u>, <u>supra</u>, and <u>Euler v. Euler</u> <u>supra</u>. Other than respondent's unsupported allegations on brief, there is nothing in the record to suggest that the marital settlement was drafted with the intention of characterizing the annual payments as alimony in gross and providing that the payments were not to terminate on the death of Ms. Springer.  To the contrary, the particular facts of this case indicate that the annual payments were an allowance for support and maintenance, not part of a property settlement binding on petitioner after the death of Ms. Springer.

IV.  <u>Conclusion</u>

After careful consideration of the parties' respective arguments, and after reviewing the divorce documents and relevant case law, we conclude that the terms of the divorce documents do provide that there would have been no liability to make the annual payments for any period after the death of Ms. Springer. Assuming that the divorce documents did not provide for termination of the annual payments on the death of Ms. Springer,

we find that the payments would have terminated under Nebraska law.  Accordingly, we hold petitioner's $50,000 payment to Ms. Springer in 1996 is deductible as alimony under section 215(a).

<u>Decision will be entered</u>

<u>for petitioner</u>.